The next case is Jimenez-Cedillo v. Jefferson Sessions III. Mr. Winograde? Yes. Okay. Judge Shedden, may it please the Court. The question in this case is whether the Court should defer to or otherwise uphold the Board's conclusion that solicitation under Section 324 of the Maryland Criminal Code with the intent to violate Section 307 of the Code is categorically a crime involving moral turpitude or a CIMT. We contend that it should not for three separate reasons. First, the Board failed to even acknowledge that it was departing from the prior agency position that sexual activity with a minor only involves moral turpitude if the perpetrator knew or should have known that the victim was a minor. Second, even if the Board had acknowledged that it was changing its position, strict liability statutes are fundamentally irreconcilable with the longstanding rule that an offense must require a culpable mental state to qualify as a CIMT. Just hold for one second. Okay. It wants to hear what you have to say. Third, the lease of the acts criminalized under the statute, such as a teenager, such as one teenager touching or asking to touch the clothed buttocks of another teenager, are not sufficiently reprehensible to qualify as a CIMT. What were the ages here of the petitioner and the person he touched? Off the top of my head, I do not know what the ages were. Yeah, I can't find it. But under the categorical approach, not relevant. The Court must assume that it's based on the lease of the acts criminalized. So in this case, that would include a 17-year-old teenager touching the buttocks of a 13-year-old teenager. If the Court does uphold the Board's determination that the statutes in question involve moral turpitude, we would ask in the alternative that it prevent the Board from applying that decision retroactively against my client because the contrary decision in matter of Silver Tribunal 1 was still in effect at the time he pleaded guilty. What about the fact that your client's already conceded removability? That's not relevant because the question is whether he's eligible to apply for cancellation of removal. This is the only obstacle standing in the way of that. Could we just announce that that statute is, in fact, as a matter of law, a crime of moral turpitude? Could this Court? This Court could affirm the Board, but we believe it would... No, not affirm the Board. Not even say in any deference to the Board of how they read it. Could we just say that is a crime of moral turpitude for purposes of immigration law or any other law, period? Yes, the Court certainly has that power. And then you would lose your appeal? And then we would lose. Can I... I just want to push on that a little bit. Assume for a minute... I want to go to your first argument that the Board failed to explain its change in position. So that's arbitrary. If that were true, that would be arbitrary and capricious under State Farm. So we would have to say that that Board of Immigration Appeals decision is invalid under State Farm. Arbitrary and capricious. You can't change position without explaining why. You think we could then go on to say, I guess, like, but that's kind of harmless error because we're deciding for ourselves what the statute means without sending it back to the Board to fix this State Farm problem? I suppose in that circumstance, yes, the proper remedy would be to send the case back. My assumption, based on Judge Shedd's question, was that the Court would have rejected that argument. But why would you have to send it back? Why would you have to send it back? We just go, that is a crime of moral turpitude, and they're justified in the action they took. They sort of had the reasoning wrong. To the extent they had the reasoning wrong, they made an error, but the decision is absolutely right. We declare it so as a matter of law. Why would you have to send it back? Well, under the Chenery Doctrine, reviewing courts are limited to the reasoning provided by the agency. A reviewing court cannot, in effect, affirm an agency on an alternative ground. Well, wait a minute now. What if we, now, I'm not so sure about that. What if we just say, this is what we're saying, or the U.S. Supreme Court said, in this case, if it got there, they go, we'll just tell you, that statute is, for all purposes of federal law, a crime of moral turpitude. And so, Chenery Doctrine, any other doctrine, it has nothing to do with what the agency's done. It's just, this is what the law is, and if you look at it any other way, it's arbitrary and capricious. You don't have to defer to anybody for anything if a court was controlling jurisdiction were to make that statement. Would you? Well, Your Honor, I think the question is a bit academic because, at the end of the day, the same reasons why the court should not defer to the board are why the statute is not a crime involving moral turpitude in the first place. The first reason why deference is not proper is, as Judge Harris mentioned, the board did not acknowledge that it was changing its position. Now, we know that, but that's not what I'm asking you. I'm asking you something entirely different than that. I'm just saying, what if today we were to say, we're now stating that statute is, the person who violates that statute is committing a crime of moral turpitude, period. Why would we have to send it back to anybody? Well, again, my understanding of Chenery is that a court cannot affirm an agency on an alternative ground. Yeah, that's an alternative argument based on the facts of the case. This is just, I'm just asking this question on a pure, straight statutory construction and announcement and pronouncement on the law. What does it matter if, what does it matter what the agency did if they danced around and said, well, you know, we look at our precedent, we don't look at our precedent, and we go, we don't care. That's fine. It's not even a question for you to look at other than to apply the law as we tell you to apply it. Your Honor, I confess I have not given much thought to the question because that is not an argument the government has raised. The government has simply asked for Chevron deference. I want to answer the same thing. Well, but, I would be happy to submit supplemental briefing. Okay. Going back to the first reason why the board's decision is not entitled to Chevron deference, while agencies are, of course, free to change their position, the Supreme Court has repeatedly held that they must at least display an awareness that they are changing position and address the reliance interest created by its prior position. The board in this case did neither. It acted instead as though it was writing on a clean slate. But in truth, the slate was far from clean. In Silva Trivino 1, former Attorney General Mukasey held that sexual activity with a minor is only a CIMT if the perpetrator knew or should have known that the victim was a minor. Former Attorney General Holder endorsed that principle in Silva Trivino 2 and the board itself affirmed that principle in Silva Trivino 3 when it said it saw no reason to deviate from the holding of Silva Trivino 1. In this case, the board nonetheless decided, or stated, that it had yet to decide whether sexual activity with a minor involves moral turpitude, even if the statute does not involve a culpable mental state with respect to the age of the victim. Now, to support this assertion, the board relied on footnote 9 of its decision in Silva Trivino 3, which left open whether a culpable mental state is required for cases involving statutory rape. There are two problems with the board's reliance on that footnote. First, and needless to say, statutory rape is a far cry from the least of the acts criminalized under this statute. The former statutory rape requires penetration. The latter criminalizes the mere touching of the buttocks or asking another to engage in the touching of the buttocks. But why isn't that a crime of moral turpitude, may I ask you, to try to engage in sex with a minor? But under these statutes, the person need not know, the perpetrator need not know or have reason to know that the person is a minor. But the person still has to be either they think it's a minor or the person is a minor, correct? No. No. Under Maryland law, the perpetrator does not need to believe the person is a minor. The statute can be applied even in cases where... No, no, no. He said or. No, no. I said either you believe it's a minor or the person is a minor. Oh, I apologize. Why isn't either of those a crime of moral turpitude? Because if it is somebody trying to have sex with a minor, why isn't that a crime of moral turpitude? Because... Either you tried to have sex with a minor or you, in fact, had sex with a minor. Because it is a strict liability statute insofar as the minor can affirmatively misrepresent their age. That's right. So then... So what? So what? You still have to have sex with the minor. Well, this statute, first of all, does not require actual contact. It applies also to mere solicitation. I know that. I know that. That's what I said. You either attempt to have sex. We were talking about the person wouldn't know the age of the person they're with. You either have to try to have sex with the minor, solicit, or else you have to have sex with the minor. Because if you have no reason to know that the person is a minor, if the victim affirmatively misrepresents their age, then... You still have to prove you have sex with the minor. Why isn't that a moral turpitude? Well, again, Your Honor, it's not intercourse. It's mere sexual conduct. Right. Sexual contact. You could touch someone's buttocks through their jeans, right? Yes, it could apply to the touching of the clothed buttocks. Would it apply to a 17-year-old boy touching the buttocks of a 13-year-old where he had reason to believe that the 13-year-old was 15? Correct. Precisely, Your Honor. And this is the same position that former Attorney General Mukasey took in Silva Trevino 1, when he said that unless a perpetrator knew or should have known that the victim was a minor, they are engaging in behavior that would otherwise be, quote, legally and morally acceptable between consenting adults. And he was talking about sex. We're talking about touching buttocks. Correct. But Silva Trevino 1 makes very clear it actually does apply to statutory rape as well. And here we're just talking about touching someone's bottom. Correct. So the statute at issue in this case is a far cry from statutory rape, which was the exception that was left open in Silva Trevino 3. Is it just that you find in Mukasey, that's fine, that's his golf, he put on it, because he thought that was what? He thought it should be put on it. But why couldn't the legislature put on it and we put on it? Even that touching a child, any of that, that's a crime of moral turpitude. Why couldn't people think that? Because it's only morally problematic if the defendant knows or should have known that the victim was a minor. That is not right. I suspect a lot of people would say it's problematic if you do something sexual to a minor. Maybe you don't think that and maybe others don't think that, but why can't that be the law? Because the board and federal courts have held for decades that a crime cannot involve moral turpitude unless it requires an evil intent, which today is manifested in the culpable mental state requirement. So this is a, in every other context, a strict liability offense cannot qualify as a crime involving moral turpitude. What the board did in this case was effectively create a one-off exception to the generic definition of a crime involving moral turpitude. And I think this goes back to the fundamental flaw of the board's decision is that it can't be reconciled with the categorical approach itself. Why is statutory rape different? I know you say that sexual act is slightly different, but that's a judgment people make that you can't do that with somebody of a certain age. I don't believe statutory rape is different. I think any offense that is a strict liability offense and that does not require the prosecution to demonstrate that the perpetrator knew or should have known that the victim was below the age of 10. What do you make of footnote 9? Yes, footnote 9 in Silvio Trevino 3 left open the question of whether the culpable mental state would apply to cases involving statutory rape. Wait, wait, can I? Yes. I read it slightly differently. I think Silvio Trevino 1 made clear this applies to statutory rape. And there's that whole long footnote explaining it applies to statutory rape, but maybe since we're not under the categorical approach, the particular facts. But otherwise, this applies to statutory rape. Then footnote, I'm getting my footnotes mixed up. Footnote 9 says effectively we may change our position on that. We haven't decided yet, but we're leaving ourselves room to change this position. But then they never did. And so there's no explanation for any change in position. I just don't understand why saying we want to reserve the right to maybe change our position on statutory rape has anything, how is that helpful? Well, my point is they did change their position in this very case. But they never, they didn't explain in footnote. It's not as though footnote 9 says we're changing our position and here's why. It just says we might change our position on this. We're leaving ourselves that right, but they never, there's no explanation in footnote 9 for why statutory rape would be different. Precisely, Your Honor. And I think for that reason, the quote unquote gap that the government says the board left open in footnote 9 was itself arbitrary and capricious. Because the board on one hand was saying we see no reason to deviate from the holding of Silver Trivino 1 that a perpetrator knew or should have known that the victim was a minor. But we reserve the right to basically hold the opposite in cases involving statutory rape. And the court, and the board never explained why it could purport to uphold a principle yet reserve a subset of cases involving that principle. You think the crime of statutory rape as a matter of law is not a crime of moral interpretation? It depends. If the state is required to prove that the perpetrator knew or should have known that the victim was below the age of consent, then yes, it could conceivably qualify as a CIMT. But if the prosecution doesn't have to know that, and if the defendant could be convicted, even if they were affirmatively misled at the age of the victim. No, you think that the age of the victim, person, does not have any bearing on the fact of moral interpretation? In and of itself. In and of itself. You think it doesn't? Not if the statute of conviction would allow for a conviction when the victim affirmatively misrepresented their age. I'm talking about the outside limit of statutory rape as a crime of moral interpretation. The age of the victim alone just cannot make it a crime of moral interpretation. Not in our view. In our view, there has to be a culpable mental state with regard to the age of the victim. What about the fact that the crime to which he pled guilty classified him as a sex offender? Under the categorical approach, that is not relevant. Because under the categorical approach, you're just looking at the elements of the crime. And also, I'm not certain in some of the cases in Walker, one of the Maryland cases we cite, in which the defendant was affirmatively misled as to the victim's age, the judge declined to require him to register as a sex offender precisely because of the facts of that case. I see that I'm over my time. You reserve. Okay. Thank you very much. Ms. Melnick, we'll be left with you. Thank you. May it please the Court, Karen Melnick for the United States. In what kind of world is sexual solicitation of a minor not morally turpitudinous? I guess they would say when it's a 17-year-old teenager who is with, what, like a 15-year-old girl and touches her butt through her jeans, thinking, I'm sorry, she's 13, but he thinks she's 15. But that's not the generic definition that the Board has explained and for which we are defending. But it was covered by the statute, right? No. You think it would not be? Why not? Because the Board – Do you think the statute doesn't cover touching the buttocks through clothing? The Maryland statute – I'm sort of starting off with the generic definition separate from whether or not the Maryland statute fits within the generic because we're dealing with two different things here. And I was going to get to Judge Shedd's question on whether or not the Court could just come out and say, isn't this statute a crime involving moral turpitude? Couldn't we just do that? Yes, you can. Well, let me answer your question. In what kind of world, might it be hypothetical, do the facts not matter? How about one where the courts have to apply a categorical approach and the courts have determined that facts don't matter, the elements, only the elements, and the least effort required to violate a statute matter. How about that? Isn't that where we are? Well, under Supreme Court law, we would argue that Duane S. Alvarez is the test. And under the categorical approach, you would have to either show your case or a reasonable possibility that the statute would be utilized in that way. And Petitioner cannot show a case under the hypothetical he talked about and is brief about asking the parent to, you know, text the child to come home because I'm going to smack you on the rear end. That is not this statute. This was not why this statute was passed. But teenagers do sometimes get prosecuted under statutes like this when they are with, they do, right? The 17-year-old boy, 13-year-old girl is not like a fanciful hypothetical. It has to be a child that is under this statute, Maryland statute that we're talking about. It has to be a child that is under 14, so 13 years old, and an age differential of at least four years. That's why I picked 17. Right. And so now we're switching back to the, because what I was trying to get to with Judge Shedd's question about can you just say that this statute's a CIMT, yes, but what we are looking for, what we would hope, is that Your Honors would give Chevron deference to the board's generic definition because that has legal consequences across the whole country and not just the Fourth Circuit. If Your Honors hold that this statute is a crime involving moral turpitude, of course it's extremely persuasive to other circuits, et cetera, but we would ask that- But what about the fact that the petitioner here, as I understand it, pled guilty under the old understanding of the law, before the government changed its mind as it perhaps reserved the right to do in footnote 9. Right. Well, two things. One, we would disagree that they just changed their mind. We would say, as the board did, that they either clarified or extended because if you remember in Sylvia Trevino 1, they were dealing with a Texas statute where it was under 17, older teenagers. And frankly, Your Honors, age matters. I'm sorry, do you read Sylvia Trevino 1 as being limited? You think that the language in that AG opinion is limited to that age differential? Because I read it as saying something much more general and enunciating a very broad principle that you need mental culpability not tied to that age differential. You just need it when it comes to making sexual contact with a minor a crime involving moral turpitude. I think as courts... And if you read it differently, I want you to point me to the language that narrows it to a particular age differential. Well, they weren't, again, they were not addressing this type of statute. It was simply, it was older teenagers and I think there was a mistake of age defense if it was a member of the opposite sex and a three-year age differential that the law wouldn't apply. Here we're dealing with at least a four-year or a six-year age differential. I might have got distracted. Yeah, you did. I'm sorry, what was your question? What about the fact that Petitioner here pled guilty to the old understanding of the law, whether or not, I mean, there must have, even if there was a need for clarification and it wasn't a change their mind, but it needed to be clarified, perhaps Petitioner pled guilty to the pre-clarification time period. Right. Well, I would point your honors to a case in your court, Pedencio v. Holder, where the focus was more on the procedural problems with the first Sylvia Trevino. However, it was a statute that involved, it was kind of a two-section statute. One where it had willfully contributes to or encouraging child delinquency and the second part of the statute engaged in consensual intercourse with a child 15 or older, not his house child or grandchild. And in discussing this case, this court cites the Sylvia Trevino and says that that second section, consensual sexual intercourse with child 15 or older, not about reason to know, should have known, that based on this determination, based on what the attorney general said in Sylvia Trevino 1, i.e. any intentional sexual contact by an adult with a child involves moral turpitude, the court said, we hold that a conviction under little i, it's two little i's in the second part of the statute, of the delinquency statute, constitutes a conviction for a crime involving moral turpitude. That's a 2012 decision. So, you know, just because there's Sylvia Trevino out there, that then, that it was speaking for all sexual crimes against all children for all time. I think that this is just one example, one that, you know, we had already, a case we had already cited in our brief, which shows that not necessarily need, knew or should have known, and that the board here, as Judge Shedd was suggesting, basically with that age differential or this, you know, a child, that that's your should have known. You know, can I, I just, I am confounded by your argument. I don't understand how it squares at all with what the Attorney General said in Sylvia Trevino. He rejects, the board suggested that whether a sexual offense with a minor involves moral turpitude should turn on the severity of the sexual contact at issue. I disagree. It's not about the particular severity. A finding of moral turpitude under the act requires that a perpetrator have committed the reprehensible act with some form of scienter. And this is set out as an opinion that establishes an administrative framework for determining whether an alien has been convicted of a crime involving moral turpitude. This is not about the facts of that case. This, I mean, if you want to talk to me about what future opinions hold and the degree to which footnote nine does or doesn't leave something open, that's one thing. But I just don't think it would be reasonable for a lawyer reading this opinion not to advise a client, listen, if you're not pleading guilty to a crime that has scienter, you're not covered. This is not a crime involving moral turpitude. Well, there is, this is, counsel likes to refer to this, you know, strict liability, strict liability. It's not a strict liability crime. You have to knowingly solicit. You have to intend to commit the crimes that are spelled out in 3307. But you don't have to know the age, which is what the AG was talking about in Sylvia Trevino. I'm sorry, pardon me? But you don't have to know the age. And there's no requirement that you should have known the age, that it was unreasonable for you not to know the age. State legislatures have decided that they're not hinging the conviction on whether or not the perpetrator knew he was having sexual contact with a child. And under this AG opinion, that means it's not a crime involving moral turpitude. So I don't understand your argument, really. Did you have any other arguments for why it shouldn't apply retroactively? Why it shouldn't apply? Any other ways to address Judge Thacker's question? I think that it, well, so before you get to Sylvia Trevino, three you mean, without considering footnote nine? Before you even get to two. Because he pled guilty while one was in full effect. Right. You know, I think that if you're involved with, if you're intentionally having sexual contact with minors, that this turpitudinous, this inherent turpitudinous. So your argument is Trevino one was wrong. No, I don't. I get that. No, I don't think it was wrong. I mean, as this court even said in Prudentio, it's that given the statute as it's presented to them now, with these age disparities where you're dealing with much younger children, this is not like this Romeo-Juliet sort of scenario. These are dealing with very young children. And because of that, this evil intent is inherent in the act. Because the other person is 17, that's a child too, 17 and 14. Are we talking about the victim or the perpetrator? The perpetrator is 17, that's a child too. It's a child too, but we're talking, the statute only covers, and the generic refers to children who are either under 14. Right. Or 15 or 16, and the perpetrator is at least 21. So we're not talking about a 17-year-old perpetrator. Section 3 would be a 17-year-old perpetrator. Under the age of 14, a person performing sexual conduct is at least 4 years older. Okay, so 13 plus 4 equals 17. Right. A minor. Yes, absolutely. A crime involving moral turpitude. Right, which is not what Sylvina Trevino I held. And so you have made what is to me an argument that the Board might make in changing its position. I'm putting to one side the fact for now that the Board has not actually explained its change in position. But I still don't understand how someone pleading guilty, while Sylvina Trevino I was in full effect, should have been required to anticipate that you would be up here today explaining to us why that AG opinion was wrong. Well, I think Sylvina Trevino said that it was a critical factor. I read to you the sentence. It said that if you keep reading, and Sylvina Trevino talks, that whole page. If everyone has it in front of you. I can keep reading. Here we go. There's the critical factor sentence. And then the sentence after that is, a finding of moral turpitude under the act requires that a perpetrator have committed the reprehensible act with some form of scienter. And then it goes on to say that this ensures that individuals will be convicted only if they willfully or knowingly directed sexual conduct towards someone they knew or reasonably should have known was a child. I just, I mean. What the Board is saying now is that that knew or should have known. I mean, you can disagree. I mean, this is what the Board is. The question goes to what the Board said then. Because that's the opinion that was in effect when he pled guilty. This just seems like a real problem. And I was wondering if you did have any argument for why there's not a retroactivity problem here if we just read, you know, the opinion kind of on its face. All I can do is support what the Board is saying. And what they're saying is. Well, the Board didn't even address this retroactivity problem, did it? No. No, but with respect to your question. And the seeming change between Silva Tribunal 1 and Jimenez-Cedillo, the case we're now dealing with. Well, you want us to give Chevron deference? We're walking through it. How exactly do we do that? I'm sorry. How do we give Chevron deference to uphold this? As the Board explained, that when you're dealing with such either young children and this age disparity, that the inherently depraved mind, the evil intent that is sort of the hallmarks of a CIMT, that that in and of itself is that moral turpitude, that it adheres to the act itself based on the disparity in the age, the age differential, or both. That's the basis for the Board's decision regarding sexual conduct. And make no mistake. I'm sorry. How do we get there then in light of what they've done previously? I'm sorry. How do we get there? Why is that not a change in position? That's what Judge Harris has been asking you about. How is that not a change in position? Well, again, we would argue that it more as an extension or a clarification if Your Honors are uncomfortable with that and just can't see that, we would still ask that it be given Chevron deference. Whether or not it gets applied retroactively or not, obviously that's up to Your Honors. So is your argument that – I understood your main argument to be, look, there's no change in position here. But if there is a change in position, are you arguing that they have – that the Board acknowledged that change in position and satisfactorily explained it under Encino Motorcars, whatever that case is called, Encino Motorcars? No, because I don't think, as the Board has said themselves, they do not see it as a change or else I think you would have seen that kind of analysis as part of the published decision. So if there was a change, we actually have to send it back and let the Board try to explain what's going on? Yes, but of course we would encourage – we would ask that you decide that that's not what happened. But if you view it that way, then yes. But we would be asking that the generic as it's articulated by the Board, e.g. under 14 years old, at least a four-year age gap, or 14 and 15 with a six-year age gap, that that's a reasonable articulation, a reasonable articulation of a crime involving moral turpitude. And given that, this statute, the Maryland statute that's under review here, falls squarely within the generic as the Board has now explained it. Has now explained it. So did I understand you a few minutes ago to suggest that we should give this Chevron deference but then we could also say it doesn't apply to the petitioner in this case? So go ahead and give it the stamp of approval but don't apply it to this petitioner because he pled guilty under the old understanding. Well, I would never – I thought I heard you say that. Well, I'm just saying that's – I think you said you'd leave that question to us. Thank you. I mean, I think you have the freedom to do that, but that's not what I'm advocating. And I just wanted to – I know it's not relevant, really, but just to answer Your Honor's question, this is an online sexual solicitation case where the law enforcement officer posed as a deaf 14-year-old. Just for Your Honor. And I want to make it clear – Do you find my theory of declaration of the statute of moral turpitude more attractive now than you did about 10 minutes ago? Well, I mean, I think what ultimately – what the government is looking for is for a win-win. We want – You get some sense. You may not win-win. You get some sense of that. I mean – Well, yes. I mean, obviously what we'd like is for Chevron deference to the generic, whether it be, you know, we'd like it to be retroactive, if not generic going forward, and of course – What do you think about – What do you – Just think about that whole idea that I floated. Now, I did float it. Yes. I didn't see you float it. But of this statute or any statute, the Court's just looking at a statute and going, you know, McCasey said what is and isn't. McCasey's not – Well, he may have been a judge at some point, but he's certainly in the judgment. He made that proclamation. Why can't a court do that and just go, this is, this statute is? Why can't a court do that? And then wouldn't – No matter what your decisions had been and no matter what McCasey or anybody else had said or Eric Holt or anybody had said, wouldn't that solve the question as to this? It would. But you think a court – I'm just asking. Can a court just do that? And then it – to not apply it that way would be clear and arbitrary, wouldn't it, by the – Well, I just, I wonder whether or not, and again, just like counsel, I wasn't prepared to – Right, but I'm asking. – for this. But I don't know if – you know, because the Board makes, as you all know, the Board makes, you know, immigration laws and decides, you know, consequences for certain acts across the country. So this Court saying that this Maryland statute is a crime involving – That's all it's in front of. Which it is. Well, I think also giving deference to the Board's generic is also important. But, yes. I mean, it would apply to this circuit that a law of this sort is a CIMT. I see my time is up. Give me a minute. Give me a minute. Thank you very much. Mr. Wannegrade, you have 30 seconds left. No. You have five minutes. I was saying if you were listening, you have five minutes. Thank you, Your Honor. Much of the discussion was addressed towards retroactivity. And I would just like to make clear that the Court only needs to address retroactivity if it first finds that the statute is a CIMT. And we would urge the Court not to do that.   it a CIMT. But if you don't, then, yes, I would say that we should not make our retroactivity arguments and that it should not be applied to the petitioner in this particular case. We're going to try to. Sure. But I would just like to emphasize why the statute itself cannot be a CIMT. Putting aside the Encino Motor Cars problem, the lack, the fact that it's a strict liability statute is simply a fatal flaw. It is a reason why it cannot ever qualify as a CIMT. If we go back to kind of first principles of the categorical approach, while a CIMT is not a generic offense like burglary, it is still subject to a generic definition. And just as breaking into a building or structure is part of the generic definition of burglary, so is a culpable mental state part of the generic definition of the phrase CIMT. So carving out an exception to a generic definition is simply antithetical to the categorical approach. Imagine, if you will, the board held in a case involving burglars who, after the breaking and entering, intended to commit a sexual offense. Imagine if the board were to say, well, in cases like that, the generic definition of burglary is no longer limited to buildings and structures. It now also includes boats and vehicles. Creating such a one-off exception would clearly be impermissible under the categorical approach. Yet that is exactly what the board did in this case. It created an exception to the generic definition of the phrase CIMT for a small subset of cases. Now, the reason that the board gave for creating such an exception is that laws banning consensual sexual activity with minors are based on a, quote, community consensus that such behavior should be unlawful. But that logic is entirely circular, because by definition, every crime enacted by a state legislature represents a community consensus that the underlying behavior should be subject to criminal punishment. So under the board's logic, every crime would involve moral turpitude. The board also relied on the purpose of strict liability sex offenses, such as maintaining chastity and protecting minors from sexual exploitation. But again, under the categorical approach... What about their view? Why isn't it that their view, not just at every statute, but every statute that criminalizes sexual conduct with a minor, meets the standard? It's not circular, if you understand it that way, that not just as a statute, because we wouldn't look at them to act unreasonably and say a statute is a statute and therefore a crime of moral turpitude, but a statute on contact, sexual involvement, solicitation with a minor. That's codified and that shows that minors, we know they're protected folks, that would show evidence of a crime of moral turpitude. Not every statute, but this type of statute. It's because, Your Honor, courts have held again and again that the cornerstone of moral turpitude is evil intent. And if the statute does not require the perpetrator to know or have reason to know that the victim is under the age of consent, then they have no evil intent. They have no more evil intent... They've done an evil act. How about that? They've done an evil act. That's not enough under the long-standing definition of a crime involving moral turpitude. That definition requires a culpable mental state. What if they've done an evil act with a minor? You don't think that could form the basis for a court decision on moral turpitude? An evil act with a minor. Not according to the long-standing definition of a crime involving moral turpitude and not according to former Attorney General Mukasey and former Attorney General Holder and the Board itself in Civil Tribunal 3. But what those Attorney Generals said, that's fine. That doesn't control us in any way. Well, we think it's eminently persuasive. It doesn't control us, but we would have to say under... Shoot, what is that case? Our reading of the statute, we would have to say that all of those opinions, to the extent they were talking about non-statutory rape crimes, are unreasonable under Chevron to come out the other way, right? The Board has addressed this question and it's come out the other way and said at least as to non-statutory rape cases involving sexual conduct with a minor, yes, a bad intent scienter is part of making it a crime involving moral turpitude. For us to construe the statute differently, we'd have to say those were all unreasonable constructions of the statute. Sure, correct. Correct, Your Honor. And up until the decision in this case, the Board interpreted CIMT the same way that we do. Right. The last point I would just quickly like to make... Yes. Sorry. Yes, Your Honor. Okay. It goes back to your original question, Your Honor, about whether this Court could reach the issue on its own or whether a remand is required. In Encino Motor Cars, the Supreme Court did not remand the case back to the Department of Labor for another bite at the apple. It remanded the record to the Ninth Circuit simply to review the question free of Chevron deference. And this Court typically, when it declines to afford Chevron deference, it does review the matter de novo. So simply because the Board did not acknowledge its change in position, I don't think that would prevent the Court from necessarily reaching the question de novo. Yeah, I struggled with that a lot because I know that the Court did that in Encino. I think that must have been... Because the Court also says in that case, this is a State Farm problem. This is arbitrary and capricious. And when we find that something is arbitrary and capricious in violation of State Farm, we definitely do send it back to the agency to let the agency either provide an explanation or change its mind. So I think Encino must have been different because once they had declared these... There were no more regulations in force, right? I struggled with this. I hear what you're saying about how Encino dealt with it under Chevron. But I still think if a failure to offer an adequate explanation is a State Farm violation, it's arbitrary and capricious, you have to let the agency go next. Yet courts have also held, though, when there is no possible explanation that an agency could give, that a remit is not required. I mean, just listening to your panel today, it sounds like, you know, it's possible that the agency might have a good explanation for why it wants to change its mind about this. And we ought to hear it out before we decide that. Sure. Our position is that at the end of the day, the fact that it is a strict liability crime is fatal to the government's argument. And there's no explanation that the Board could provide for why the statute is a CIT. Thank you very much. We appreciate your arguments here today. We will have the Clerk adjourn the Court, and then we'll step down to Great Council. This Honorable Court stays adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Dennis W. Shedd, Stephanie D. Thacker, Pamela A. Harris